## JAMES PORTER v. JIRAH VAUGHN.

*Audita Querela. Demurrer. Execution may issue in some cases, after a year and a day.*

The writ of *audita querela*, is an important remedial and equitable process, and should be allowed in cases where an execution has been irregularly issued, and from which the party should be relieved, and it should at least be a concurrent remedy, with that relief which is granted on motion.

The complainant brought his writ of *audita querela*, and upon *demurrer* it was held, that where an execution has been issued from a court of law, this writ cannot be sustained, to vacate the same, or suspend its operation, on the ground that it has been enjoined by the court of chancery, and that the remedy of the complainant is only to be found by application to the chancellor.

If there has been a stay of execution, and the party prevented from issuing the same, execution may issue after the year, without *scire facias*, and if a judgment be with *cesset executio*, by agreement until such a time, there need be no *scire facias*, until a year and a day after the time agreed upon, even though such *cesset* is not entered upon the roll.

AUDITA QUERELA. The Complainant alledged in his declaration, that at the April term of the Rutland County Court, 1844,

Porter *v.* Vaughn.

the said Jirah Vaughn recovered judgment against the complainant, for the sum of $1268.66, damages, and the sum of $20.19, costs of suit; which judgment so entered, was by consent of parties under the following rule of court: that no execution issued until after the adjourned court of chancery,— judgment to remain subject to said court of chancery as to further stay, until the determination of suit, then and still pending in said court of chancery, between complainant and Jirah Vaughn; that, at the time of the rendition of the judgment aforesaid, a suit in chancery was pending in favor of complainant against Jirah Vaughn and one Reuben R. Thrall, which was the suit referred to in the rule aforesaid, and said suit has ever since that time been prosecuted in said court. That on the 10th day of April, 1843, an injunction was issued by said court of chancery, strictly enjoining said Jirah from prosecuting said suit at law; that said injunction was not removed at the adjourned term of said court of chancery referred to in the rule aforesaid, that ever since the issuing of said injunction, the same has been at all times, and still remains in full force, &c. And further complains that said Jirah Vaughn at divers times after the rendering of said judgment at the said April term, 1844, has taken out executions upon said judgment, one of which executions was issued by the Clerk of said Rutland County court, and dated the 20th day of January, 1846; that after said last mentioned day, to wit, on or about the first day of April, 1847, more than a year and a day after the issuing of said execution on said 20th day of January, 1846, said Jirah took out a pluries execution upon said judgment, signed by F. W. Hopkins, Clerk of said Rutland County court, and complainant avers that said execution was not issued on the 19th day of January, 1847, but was issued on or about the 1st day of April, 1847, and was by said F. W. Hopkins, dated the 19th day of January, 1847, by reason of which said failure to issue an execution within one year and a day after the said 20th day of January, 1846, said Jirah lost all right to issue executions upon said judgment, if such right he ever had. And that said Jirah, on the 22d day of April, 1848, took out a writ of execution upon said judgment, for the sum of $1268.66 damages, and the sum of 20.19 costs, with further sum of one dollar and twenty-five cents for said execution, and four former, signed by F. W. Hopkins, Clerk of said county

Porter v. Vaughn.

court, and put said execution into the hands of Jacob Edgerton, Sheriff of the county of Rutland, aforesaid, to levy, serve and return, and said Jacob Edgerton threatens to levy said execution upon the goods, chattels or estate of complainant, or to arrest the body of complainant, and him commit to jail, unless this complainant shall pay said execution with interest and officer's fees thereon — by all which the said James Porter, as he says is, &c., and has suffered damages to the sum of five hundred dollars.

To this complaint defendant demurred.

The county court, September term, 1851,— COLLAMER, J., presiding, rendered judgment that the declaration is sufficient, and entered judgment for the plaintiff, that execution mentioned in the declaration be set aside, and for his costs. Exceptions by defendant.

*Thrall & Smith* for defendant.

1. The plaintiff's declaration shows that before and ever since said judgment, the defendant has been restrained, by acts of the plaintiff, from taking execution. Hence it is not for plaintiff to complain that execution was not issued before it was. *Mitchell* v. *Cue and wife*, 2 Bar. 660. *Fletcher* v. *Mott*, 1 Aik. 339.

2. It is essential that the declaration should show that the party aggrieved has some matter which he might have availed himself of in defense, had *scire facias*, or debt been brought, instead of taking the execution. The judgment is valid and unsatisfied. The count is defective in substance. *Staniford* v. *Barry*, 1 Aik. 321. *Porter* v. *Vaughn*, last term here, 1 Salk. 93, 1 Wilson 98.

3. *Audita querela* cannot be sustained in a case like this. It only lies to relieve from void process. *Betty* v. *Brown*, 16 Vt. 670. *Sawyer* v. *Doane*, 19 Vt. 598. Bing. on Ex. 13, and cases cited. *Finney* v. *Hill*, 13 Vt. 255.

The appropriate remedy would have been by motion to the court, when any error could have been corrected. At least, such should have been the remedy first sought. *Allen* v. *Carpenter*, 7 Vt. 397. *Porter* v. *Vaughn*, last term here. *Smith* v. *Rix*, 9 Vt. 241. 2 Aik. 248.

*M. G. Evarts* and *Foot & Hodges* for plaintiff.

Porter *v.* Vaughn.

1. The declaration is based upon the *legal presumption* of pay-
ment, which arises in all cases, after a year and a day, and plain-
tiff can avail himself of this presumption, and need not alledge it
in his declaration.   Chit. on Pl. 221.

2. It cannot be denied that an execution so issued would be set
aside on motion.   A motion is only a modern substitute for *audita
querela*, which is concurrent with it as a remedy, and will lie in
some cases, where a motion will not.   4 Com. Dig. 257 (execution
I. 4.)   Bing. on Ex. 264 note.   2 Chit. R. 384.

*Audita Querela* is a more appropriate remedy than the one by
motion, for two reasons,—

1. The issue of fact which arises upon the declaration could
not be tried upon motion.

2. The remedy by motion is only available during the session
of court ; *audita querela* is open to the party at any time, and is
the proper remedy, and they are concurrent remedies.   1 Aik.
339.   7 Vt. 397.   17 Vt. 253.   19 Vt. 43.   4 Mass. 483.   1 Ld.
Raymond 439.   2 Wm. Sand, 148 (b.)   4 Com. Dig. 457.

The opinion of the court was delivered by

ISHAM, J.   The questions in this case arise upon a general de-
murrer, and it is insisted on the part of the defendant that this
writ cannot be sustained upon the facts set forth in the complaint.

The writ of *audita querela* was considered by this court in the
case of *Staniford* v. *Barry*, 1 Aik. Rep. 323, to be in the nature
of a bill in equity, and designed to afford specific and certain re-
lief from the wrongful acts of a party who is seeking to enforce
the final process of a court of law, in cases where it has become
illegal and inequitable to have it thus enforced.   As a general
rule, it is confined to matters arising subsequent to the rendition
of the judgment, as the judgment is, and should be conclusive
upon all matters embraced within it.   Yet it has been held to ex-
tend to matters arising previous to the judgment, if the party has
been deprived of an opportunity in court, to avail himself of the
matters in his discharge.

At common law it afforded a very extensive remedy; and
relief was granted in all cases where an execution was irregularly
issued.   To a great extent the remedy by this process under the
present system of English practice, has been superseded by grant-

Porter *v.* Vaughn.

ing a more summary relief on motion. It is evident however, that this *summary relief* does not take away the remedy by this writ. Bingham in his treatise on executions, 265 (e) says that "this writ formerly was the only means of redress, in cases where now relief is granted on motion." Thus making this writ, at common law, a concurrent remedy, with the relief granted on motion. From the case of *Foot* v. *Cremer*, 1 Ld. Raymond 439, it appears that Lord Holt considered this writ as more extensive in affording relief, than that by motion, and that it should be resorted to where the matters complained of are disputed, so that an issue may be properly formed in the pleadings, for trial by the court or jury.

These principles in relation to this writ have an important application in this State, under our system of practice. The difficulty of obtaining that summary relief granted on motion, and its want of adaptation to the practice of our courts, renders this writ an important remedial and equitable process, and it should be allowed in cases where an execution has been irregularly issued, and from which the party should be relieved, and should at least be a concurrent remedy, with that relief which is granted on motion.

By the demurrer to this complaint, it is admitted that the judgment upon which this execution is issued, and which is sought to be vacated, was rendered at the April term of the county court for this county, A. D. 1844. Upon this judgment, several executions have been issued. The last execution was dated April 22, 1848. and which the complainant says the defendant threatens to levy on his person and property, and from which this relief is sought. The objection is not made to this execution, that it issued after the expiration of more than a year and a day from the former, but the objection is urged against the one issued the next previous to this. And the demurrer admits that the execution dated January 19, 1847, was in point of fact issued about the 1st of April of that year, and more than a year and a day after the issuing of the previous execution, on the 20th day of January, 1846, and the complainant insists that the execution so irregularly issued is void, and that he should be relieved therefrom, and from all those subsequently issued on that judgment, and that no execution can be henceforth issued until the judgment is revived by scire facias.

The demurrer also admits that at the time of the rendition of

the judgment in April, 1844, the same was rendered under a rule entered upon the calendar, that no execution should issue until after the adjourned court of chancery, and the judgment was to remain subject to the order of the court as to the further delay of the execution until the determination of the suit in chancery.  It is further admitted by the demurrer, that on the 10th day of April, 1843, the suit upon which this judgment was rendered was enjoined by the chancellor, and that the injunction upon this suit has never been removed, but still remains in full force.

For these several reasons, it is insisted that the executions have been irregularly issued, and that by this writ, the complainant should be relieved from the execution with which he is threatened. There is, however, no cause of complaint in consequence of the rule entered at the time of the rendition of the judgment in 1844, for that rule expired by its own limitation, after the adjourned court of chancery.  The parties evidently sought for that extension only for the purpose of seeking further relief at that time, from an order of the chancellor, and when that period arrived the order could have no further effect in delaying the issuing of the execution.

A more important question arises from the injunction granted by the chancellor, from any further proceedings in that suit.  The issuing of the executions was a manifest violation of the injunction, but the question arises, can relief be sought in this court and by this writ, or should the complainant apply to the chancellor for him to protect his own orders, and enforce his own decrees.  It is to be observed that an injunction does not operate upon the judgment execution, or proceedings in court.  It is never intended to interfere with, or control the decisions or administrative rights of the courts of law.  But the injunction acts on *the party* as subject to the jurisdiction of a court of equity.  And the chancellor enforces his orders and decrees on the ground of his jurisdiction, not over the court of law, but over the parties to the suit at law.  This was early decided in the English chancery courts, and has ever since been regarded as the ground upon which these proceedings rest.  Leading Eq. Cases, part 2, page 82, 92, and cases cited.

There is, therefore, great propriety in leaving to the court of chancery, the enforcement of its own rules, and the deciding whether the party has been guilty, or not, of a violation of the order

Porter *v.* Vaughn.

and injunction of the chancellor. It is a matter over which a court of chancery can exercise discretionary power, and enforce its decrees and injunctions under rules and powers peculiar to that court. Where, therefore, an execution has been issued from a court of law, this writ cannot be sustained to vacate the same, or suspend its operations, on the ground that it has been enjoined by the court of chancery, and we entertain no doubt, that for that cause, the remedy of the complainant is only to be found by application to the chancellor.

The only remaining ground upon which this writ can be sustained to vacate that execution, is that an intermediate execution was issued after more than a year and a day from the former. At common law it is well settled that an execution so issued is irregular, and that as a general rule it will be vacated by this writ. The principle upon which it is so held is thus stated in Bac. Abj. tit. Extin. (H) " where a party lies quiet so long after his judg-" ment, it shall be presumed he hath released the execution, and " therefore the defendant shall not be disturbed without being " called upon, and having an opportunity of pleading the release, " or showing cause if he can, why the execution should not issue."

This doctrine has been recognized in this State, in the case of *Fletcher* v. *Mott*, 1 Aik. Rep. 339. To this rule, however, there is this exception,—if there has been a stay of execution, and the party prevented from issuing the same; the execution may issue after the year, without *scire facias*. Several of the cases under this exception are given in 4 Com. Dig. 257. If the execution is stayed by the pendency of a writ of error, scire facias need not be brought. If a judgment be with *cesset executio* by agreement until such a time, there need be no scire facias until a year and a day after the time agreed, though such *cesset* is not entered upon the roll.

These principles were sustained by the Supreme Court in the case of *Fletcher* v. *Mott et al.*, and the court in that case remark, that if the cause is delayed by injunction out of chancery, execution may issue after the year without scire facias; and these principles we think are decisive upon this part of the case.

The complainant himself, sets forth the existence and pendency of the injunction from 1843 to the present time, and it is admitted by the defendant in his demurrer. The case, therefore, is shown

XXIV.     15

to be as clearly within the exception of that rule, as if the suspension of that execution had been created by the pendency of a writ of error. Although the defendant has issued executions in contravention of the injunction, yet when the injunction is removed, he may obtain a regular execution on the judgment within the year after such removal. As the injunction in this case still exists, the remedy of the party is to be found only by application to the chancellor.

However favorable therefore, we may regard this writ, and feel disposed to extend it to cases where a party should be relieved from an execution, we cannot consider any of the matters urged in this case as proper matters for relief under this process.

The result is, that the judgment of the county court sustaining the writ, must be reversed.