Catlin *v.* Merchants' Bank.

---

---

HENRY W. CATLIN *v.* MERCHANTS BANK.

*Levy of Execution. Ignorance of Law. Waiver.*

*Quere.* Whether upon application by motion to the county court to set aside an execution issued upon a judgment of that court, on the ground that the judgment had been suffered to lie dormant for more than a year and a day, the decision of that court is a proper subject of exceptions, and whether the supreme court have jurisdiction to revise it.

It is well settled that if a judgment is suffered to lie more than a year and a day without taking execution upon it, there must be a *scire facias* to revive it, and if after a delay for more than that time, without some legal excuse for it, execution is taken out, it will be irregular.

And it will be no sufficient legal excuse for not sueing out an execution within a year and a day from the time final judgment was rendered, that a prior attachment had been in continued existence upon the real estate of the debtor, upon which the creditor had his attachment lien.

But the irregularity of the execution on this account would be of the most technical character, and the least act of waiver by the debtor of the irregularity, or acquiesce, or action on his part under it as a valid and regular procees, would be sufficient to preclude him from afterwards objecting to it as irregular.

Where upon notice of the levy upon his real estate, the debtor agreed with the creditor upon the appraisers, and participated in the proceedings with the officer and appraisers in setting out the homestead in the estate, it was *held*, to be a waiver of the irregularity in the execution on account of its not having been issued within a year and a day after final judgment was rendered.

Catlin *v.* Merchants' Bank.

It will be no defence to the debtor, who acted under the process as regular, that he was ignorant of its irregularity.

This was a motion to set aside an execution issued upon a judgment from the Chittenden County Court, dated February 4th, 1863, on the ground that the judgment had been suffered to lie dormant for more than a year and a day.

The original writ was returnable to November Term, 1854, in a suit, *Merchants Bank* v. *Henry W. Catlin*, and was served October 10, 1854, by making a general attachment of all the lands in the towns of Burlington and Colchester as the property of said Catlin. A previous attachment in the same form had been made of the same lands in a suit in favor of the Union Bank against Catlin, returnable to the same term of said court, which suit and attachment was then and still is pending.

At the March Term, 1855, the Merchants' Bank recovered judgment in its said suit for damages and costs $4159.48.

April 30th, 1855, an execution issued upon this judgment which was returned unsatisfied. February 4th, 1863, an alias execution upon this judgment, (the execution in question) issued, no other execution having been issued intervening, and there having been no injunction or stay of execution. This execution was levied and extended February 23d, 1863, upon Catlin's life estate in certain premises in which he had become tenant by the curtesy, in satisfaction of $3610.80 of the execution, and was returned March 30th, 1863.

The affidavits of the plaintiff and his counsel, Daniel Roberts,Esq., tended to show that they were present when the execution was levied and set off on said estate, but did not examine or read it, and had no knowledge or suspicion as to its date or regularity. The affidavit of Geo. F. Edmunds, Esq., attorney for the Merchants' Bank, tended to show that a prior attachment lien on this estate had been kept in force in favor of the Union Bank, and that on this account this judgment in favor of the Merchants' Bank, had been delayed ; that after the execution was issued and before this motion was filed, it was put into the hands of a legal officer and payment demanded of said Catlin, but was not made, and thereupon Catlin voluntarily joined with said bank in agreeing upon

appraisers of the real estate so attached, and the levy thereupon proceeded in due form, Catlin participating in the proceedings thereon as to a homestead, &c., &c., and that the levy was completed, except in making return by the officer, without objection or pretence from Catlin or his counsel that the execution ought not to have issued or been levied for any reason. On being called in behalf of said Catlin, Mr. Edmunds made further affidavit to the effect that, on the occasion when appraisers were finally agreed upon·on the execution on which Catlin's homestead was set off, Catlin insisted that he had no such interest in the property as could be levied upon, and in this connection said he did not want to do anything which would prevent him from insisting upon his rights in this respect, but made no allusion to any other objection to proceeding with the levy.

Upon the facts stated and found, the Court, September Term, 1863, PIERPOINT, J., presiding, denied the motion *pro forma* with costs to the defendant. To this decision the plaintiff excepted.

*Daniel Roberts,* for the plaintiff, contended that, there having been no injunction or order staying execution, or *scire facias* to revive the judgment, the execution issued irregularly, and may be set aside upon motion. *Fletcher* v. *Mott,* 1 Aik. 339 ; *Allen* v. *Carpenter,* 7 Vt. 397 ; *Mattocks* v. *Judson,* 9 Vt. 343 ; *Vadakin* v. *Soper,* 2 Aik. 248 ; WILLIAMS, J., in *Hurlbert* v. *Mayo,* 1 D. Chip. 391 ; BENNETT, J., in *Stanley* v. *McClure,* 17 Vt. 255 ; *Porter* v. *Vaughan,* 24 Vt. 211–12 ; *Hapgood* v. *Goddard,* 26 Vt. 401 ; *Tudor* v. *Taylor,* 26 Vt. 449. The decision below did not rest in the discretion of the county court. The previously created lien did not cover the common law irregularity. See C. S., ch. 32, § 83. Any recognition of the debt, as claimed, cannot change the common law rule. There was no waiver of the irregularity. *Cobleigh* v. *Pierce,* 32 Vt. 788, 796 ; *Whitaker* v. *Williams,* 20 Conn. 98 ; *Harlan* v. *Harlan,* 15 Penn. St. 506 ; 12 U. S. Dig. § 49. A waiver in law stands upon the ground of an estoppel. *Hinks* v. *Cram,* 17 Vt. 449, 455 ; 2 Smith's L. C. 460 ; *Dazel* v. *Odell,* 3 Hill, 219 ; *Davis et al* v.

Catlin v. Merchants' Bank.

*Bradley et al.*, 24 Vt. 55–64. Neither one of the three elements of estoppel *in pais* exists in this case.

*George F. Edmunds*, for the defendant, contended that the decision of the county court in the exercise of its *summary* jurisdiction, on motion to set aside its own process, is not revisable on exceptions; any more than it would be on a writ of error. And that the manifest effect of the statute (G. S. p. 303 § 94) is that the judgment shall, by its own force, operate on the property until the plaintiff in it can execute it with safety, and that then he may do so.

The rule of the common law, that if a judgment is suffered to lie dormant more than a year and a day after its rendition, *without legal excuse therefor*, it is presumed to have been paid, is purely one of *presumption* arising from an *unexplained* and *voluntary* delay. And anything that explains the delay, either by the conduct of the defendant, or the agreement of the parties, or otherwise, rebuts the presumption. *Mitchell* v. *Cue*, 2 Binn. 660; *Hiscocks* v. *Kemp*, 30 E. C. L., 182; *Dunlop* v. *Speer*, 3 Binn. 169; *Miller* v. *Miller*, 2 S. and R. 35; *Fletcher* v. *Mott*, 1 Aik. 339.

Any step taken by Catlin, under the process as effective, was a waiver of his right to object. And he cannot avoid this result by an evasive affidavit of ignorance of this mere formal irregularity. " Although he swears that he was not aware of the defect until a short time before the application; he was *bound* to be aware of the defect as soon as he was aware of the proceedings out of which the defect arose." (2 Harr. Dig. 2955). As well might one attempt to sustain a dilatory plea after proceeding on the merits, by swearing that he had omitted to inform himself that he had a defence in abatement. *Fletcher* v. *Mott, ante;* 2 M. & W. 881; 5 M. & W. 25; 8 M. & W. 289; 9 M. & W. 764; (11 Cl. & Fin. 643, "I hardly know any such defect which may not be cured by the party attending, &c., as if the process were valid," L'd BROUGHAM;) Tidd Pr. 512; *Harrison* v. *Williams*, 29 E. L. & E. 192; 2 Harr. Dig. 2982; *Chapman* v. *Snow*, 1 B. and P. 132; *Const* v. *Burr*, 2 Russ. 161; *Carvick* v. *Young*, 1 Jac. 524; 32 Vt. 1; *Exparte Ransom*, 20 How. 581; *Dale* v. *Radcliffe*, 25 Barb. 333; *Glidden* v. *Towle*, 11 Foster 147; 22 Barb. 656; 3 Wis. 274; 9 Cush. 512; 6 Md.501, (16 Dig. 636.)

Catlin *v.* Merchants' Bank.

And these cases show that the objection is equally waived whether such acts took place before or after motion filed.

POLAND, CH. J.    This was an application by motion to the county court, to set aside an execution issued upon a judgment of that court; on the ground that the judgment had been suffered to lie dormant for more than a year and a day.

The county court refused the motion, and the matter is brought to this court by exceptions for revision. ·

It is objected in the outset by the creditor in the execution, that the decision of the county court is not a proper subject of exception, and that this court have no proper jurisdiction to revise it.

If the question were now raised for the first time, I should not entertain the slightest doubt but that the objection was a sound one, and that the exceptions should be dismissed.

There was no cause depending between these parties in the county court, in which any issue either of law or fact could be joined.    The whole proceeding in that court was a motion for an order to set aside or recall an execution which had been issued by it, on the ground that it issued irregularly.    It was not a proceeding upon which any issue could be properly joined, or tried, or in which any judgment was asked, or could be rendered, in favor of either party.    It was a summary application to the general authority of the court to control its own process, and so far as any redress could be obtained in such summary mode, the party seeking it must be content with such as the court to whom his motion was made, saw fit to grant him ; and, as it seems to me, it is wholly immaterial in what way, or upon what ground the motion is disposed of ; the disposition is final, with the court making it.    If either party desires to present the question in a form, that error may properly be predicated upon the decision it must be by some different and independent form of proceeding, where an issue may be joined either of law or fact.    This seems to be the plain meaning of the statute authorizing the transfer of questions of law from the county to the supreme court.

This view of the subject is somewhat embarrassed by the consideration that our reports show two instances in which applica-

tions similar to this have been brought to this court on exceptions, and the court have proceeded to decide the question, as if properly before it. *Allen* v. *Carpenter*, 7 Vt. 397; *Hapgood* v. *Goddard*, 26 Vt. 401. But in neither was this point decided. In the first, the question was distinctly made and argued by counsel, but no allusion is made to it in the opinion of the court. In the second, the point was not made at all. It is to be noticed however that in both, the decision made in the county court was approved and affirmed, so that it really became unnecessary to determine this point. Had it been otherwise, I can hardly doubt that the view now taken by myself would have been sustained by the court. We do not find it necessary now to decide this point, and we should regret in this case to be compelled to do so, as the decision of the county court was *pro forma.*

By the common law, it was well settled that if a judgment was suffered to lie more than a year and a day without taking execution upon it, there must be a *scire facias* to revive it, and if after a delay of more than that time, without some legal excuse for it, execution was taken out, it was irregular, and on motion to the court from which it was sued out, it would be set aside. This doctrine of the common law has repeatedly been recognized in this state, and always so understood by the legal profession. See *Fletcher* v. *Mott*, 1 Aik. 339; *Porter* v. *Vaughan*, 24 Vt: 211, and other cases cited by counsel. This delay must have been voluntary on the part of the execution creditor, in order to have such effect, and if any legal reason existed why he could not take execution, as if a stay of execution was ordered by the court, or was procured by a writ of injunction, or writ of error, it was otherwise. It seems to have been held too in some cases, that a mere agreement of the parties, for a stay of execution, without any order of court, would have a like effect; but we find no occasion to determine whether anything short of some binding legal impediment to the issue of an execution, would afford a legal excuse for delay.

It is said in some of the cases, that the reason why an execution cannot regularly be issued after a delay of more than a year and a day, is that the judgment is presumed to be satisfied.

But this is not strictly correct. Indeed, the legal presumption is that the judgment is not satisfied until the statute of limitations has run upon it, where an action of debt is brought upon it, or on a *scire facias* to revive it. But as this period of time is ordinarily sufficient to enable a creditor to enforce payment of a judgment by execution, and his own interest will usually induce him to exact a speedy satisfaction, a greater delay affords some presumption or probability of payment, therefore after that the creditor is not allowed to proceed with another execution without calling the execution debtor before the court, to show cause against it; but when thus in court, the creditor is not bound to explain the delay, or rebut any presumption of payment, but the burden is on the debtor to show payment or other legal reason why the creditor should not have another execution.

In this instance the creditor claims that his delay in suing out execution for so long a period, was properly explained by the continued existence of a prior attachment lien on certain real estate of the debtor, upon which he also had a lien created by attachment. The statute provides that real estate attached on *mesne* process shall be held five calendar months after the rendition of final judgment; and if such real estate shall be encumbered by a prior attachment, it shall be held five calendar months after such encumbrance shall be removed. See G. S. 303, § 94.

But the existence of such prior lien does not operate as any stay of execution, and the creditor is at perfect liberty to take his execution and satisfy it out of other property of the debtor, if any can be found. Why then does not the delay for more than a year and a day to take execution, raise just the same probability or possibility of satisfaction as in ordinary cases? If it were true, that in order to give the creditor the benefit of his lien, after the removal of the prior encumbrance, it became necessary to make such condition of things an exception to the general rule on the subject, we might well enough hold that the legislature so intended, in order to make the lien thus given of practical benefit to the creditor. It is clear, however, that there is no such necessity. The creditor has precisely the same means of keeping his execution alive in such case as in every other, by

taking out his successive executions. We think, therefore, that the execution in this case, when issued, must be regarded as having issued irregularly.

But the irregularity was of the most technical character, and it is not now pretended that the creditor's failure to take out successive executions could have affected the debtor in the slightest degree, except to increase the costs for him to pay. Neither is there the smallest pretence of any satisfaction of the judgment.

Under these circumstances, the least act of waiver by the debtor of the irregularity, or acquiescence, or action on his part under it as a valid and regular process, was sufficient to preclude him from afterward objecting to it as irregular.

It appears that on being notified by the officer of the levy of the execution on his real estate, the debtor agreed with the creditor upon the appraisers to appraise the property, and participated in the proceedings with the officer and appraisers in setting out his homestead in the estate. In our judgment when he thus proceeded to avail himself of all the rights and benefits which the law gave him under this proceeding, as a regular and valid one, he precluded himself from afterwards objecting to the regularity of the process upon mere technical grounds, not affecting his substantial right. This principle is amply supported by the numerous cases cited upon that point, but the reason and justice of it is too apparent to require their citation in its support. But the debtor claims that it should not apply to him because he was then in ignorance of the irregularity. If he were ignorant, whose fault was it? The creditor did nothing to deceive him, the execution under which the proceedings were had was before his face, the records of the court were open for his inspection, and he was bound to know what was so apparently and easily within his reach.

If it be true, that he really was ignorant of the irregularity, and took no care to know, it only shows more clearly how entirely without foundation is the claim to have the execution set aside for fear of injustice to the debtor.

The county court, we think, correctly refused the motion, and the decision is affirmed.